STATE OF IOWA v. LEROY HAINES, Appellant.

**Criminal law:** LARCENY: INTENT. On this prosecution for larceny
1 the evidence concerning the defendant's intoxicated condition at
the time he took the property was such as to take the question
of his comprehension of the act, so as to involve a specific intent
to steal, to the jury.

**Same:** TERM OF SENTENCE. Under the indeterminate sentence law
2 the court has no discretion as to the term of punishment to be
imposed for larceny.

*Appeal from Keokuk District Court.*—HON. K. E. WILL-
COCKSON, Judge.

TUESDAY, OCTOBER 17, 1911.

THE defendant was convicted of larceny, and sen-
tenced under the indeterminate sentence statute to impris-
onment in the reformatory at Anamosa for a term not
exceeding five years. From this sentence he appeals.
*Affirmed.*

*D. T. Stockman,* for appellant.

*George Cosson,* Attorney-General, and *John Fletcher,*
Assistant Attorney-General, for the State.

McCLAIN, J.—The evidence on the trial showed be-
yond question, and practically by defendant's admissions
in his testimony as a witness, that in the town of Hayes-
ville, in Keokuk county, he took the horse and buggy of
another and drove away with them, and continued to use
them as though they were his own in driving across the

country until he was intercepted and arrested by an offi-
cer. His testimony as a witness and that of other wit-
nesses called in his behalf tended to show that he was so
far intoxicated at the time he took the horse and buggy,
and continuously during his possession thereof down to
the time of his arrest, that he could not have entertained
the specific intent to appropriate the property which is
essential to the crime of larceny.

As counsel who was appointed by the court to con-
duct the defense and prosecute the appeal insists that the
evidence failed to support the case of the prosecution in
this respect, it will be necessary to notice

1. CRIMINAL LAW:
larceny: in-
tent.

briefly the facts and circumstances as shown
by the record attending the taking possession
of the horse and buggy by the defendant and his subse-
quent conduct with reference thereto. It appears that
defendant was for a time in the employ of one railroad
company as locomotive fireman, and subsequently in that
of another as brakeman, and that, having been laid off
by each company, and being unable to secure another
position, and pending an application for restoration to his
position as fireman, he was going by rail to the town where
his wife and children were with their relatives. He
should have left the train, according to his account, at the
town of Hedrick, in order to go by another train to his
destination; but for some reason he passed Hedrick and
was put off at Hayesville. At this place he offered whisky
from a pint bottle which he had in his possession to the
station agent and his assistant, and apparently drank
some himself, and then he went to the business street of
the town and entered into conversation with two men, who
were strangers to him, offering liquor from his bottle to
them also. From one of these men he made inquiries
about an automobile which had just been left at the side-
walk by its owner, saying that he was looking for a man
for whom a reward was offered, and might just as well

have the money as anybody else, and that he was going to "run him in" by 10 o'clock. This conversation was about half past 6 o'clock on the evening of October 12. While defendant was still talking with this man, one Hart drove up with a horse and buggy, and, leaving the horse tied at a hitch rack, went into the adjacent store, whereupon defendant asked who the man was and commented on the good appearance of the horse. When Hart came out of the store in a few minutes, his horse and buggy were gone. An officer, who had seen the horse and buggy being driven along the highway eastward out of Hayesville and supposed that the driver was Hart, gave information as to the direction in which the horse had been driven, and, finding it had been taken without Hart's consent, he and another officer proceeded separately through the country for the purpose of apprehending the thief. About 10 o'clock the other officer met defendant driving along the highway and arrested him. In the meantime defendant had apparently driven in a somewhat indirect way toward Fairfield, and had stopped at a farmhouse and inquired as to the road for that destination, and then proceeded on the road indicated. When defendant was arrested he explained that a boy at Hayesville had told him to take the horse and drive it, if he wanted to reach Hedrick. At the town of Ollie, to which defendant had been taken under arrest, the first officer above referred to, coming into the crowd of people where defendant was, said that he "would like to see a man that was bold enough to snipe a man's horse in daylight," and the defendant rose to his feet, patted himself on the breast, and said, "I am the man." At this time defendant said something about the horse being borrowed. When arrested, the defendant had a pint bottle of whisky in his possession, from which he drank while accompanying the officer to Ollie, and he seemed then to be in an intoxicated condition. It is sufficient to say, further, that none of defendant's explanations after his ar-

rest seemed to have any consistency with facts, and that as a witness he made no effort to sustain their truth. He testified that he had no recollection of what happened after he reached Hayesville until he found himself under arrest.

The contention by his counsel is that he was so intoxicated that he did not know what he was doing when he took the horse, and that the absence of criminal intent is supported by the general absurdity and inconsistency of his entire conduct. The evidence was by no means conclusive, however, that defendant was so far intoxicated when the act was committed that he did not know what he was doing. The men who saw him in Hayesville did not agree in their testimony as to his intoxicated condition. The railroad agent said defendant talked like an intoxicated man, but the two persons with whom he conversed on the street did not notice any such condition. It was a fair question for the jurors to decide, under the evidence, whether, in view of defendant's condition, he was beyond a reasonable doubt capable of understanding what he did and the natural consequences of his act in taking the property. The verdict was not, therefore, unsupported by the evidence; and yet the proof of intoxication and the absence of a criminal motive was such that there is a serious question in our minds as to whether defendant was actuated by a criminal purpose. The evidence indicated that defendant made no effort to evade pursuit, though he left Hayesville before dark, and the moon was shining brightly, so he could be easily followed.

If the court had been at liberty under the law to exercise a discretion in the imposition of a sentence, and in the exercise of this discretion had imposed a sentence 2. SAME: term for the full limit of imprisonment author-of sentence. ized by the statute for such an offense, we should have been inclined to reduce the term of imprisonment on this appeal. Under the indeterminate sentence

law the lower court had no such discretion, and we have no authority to interfere.

Errors are assigned in the refusal of the trial court to give instructions asked for defendant on the general subject of intoxication as bearing upon criminal intent in cases of larceny, and counsel supports these requested instructions by references to cases in which the very language of the instructions is found. It is not usually practicable to quote, in giving instructions, the language used by courts in other cases in discussing questions of law. Such language is often inapplicable to the facts of the case on trial. The court below did instruct the jury fully as to the bearing of evidence of intoxication on the question of specific intent, and no complaint is made of these instructions.

Finding no error in the record, the judgment is *affirmed*.